IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PIRAMAL CRITICAL CARE, INC., a Delaware corporation, d/b/a RXELITE HOLDINGS INC.<br><br>  Plaintiffs,<br><br>  v.<br><br>NEPHRON PHARMACEUTICALS CORPORATION, a Florida corporation,<br><br>  Defendant. | Case No. 1:11-cv-00480-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

The Court has before it Defendant's Motion to Dismiss Plaintiffs' Complaint (Dkt. 17), Plaintiff's Motion to Amend the Complaint (Dkt. 25), and Plaintiff's Motion to Strike (Dkt. 30). The Court has read and fully considered the briefing and related materials submitted by the parties, and now issues the following Memorandum Decision and Order denying Defendant's Motion to Dismiss, granting Plaintiff's Motion to Amend, and denying Plaintiff's Motion to Strike as moot.

# BACKGROUND

Plaintiff Piramal Critical Care, Inc., doing business in the state of Idaho as RXElite Holdings, Inc., is a Delaware corporation which purchases pharmaceutical drugs for resale under its own label on the wholesale market. Defendant Nephron Pharmaceuticals Corp. is a Florida-based manufacturer of such drugs. From August 12,

2002, until August 18, 2006, Piramal outsourced its production of certain asthma drugs to Nephron under a Pharmaceutical Manufacturing and Distribution Agreement (PMDA), which was terminated on the latter date by agreement of the parties after Piramal encountered financial trouble and defaulted on a series of notes. *2nd Am. Compl.* at 2-7 ¶¶ 2-38, Dkt. 25 Ex. A. The Termination Agreement, in addition to dissolving the PMDA, provided that in exchange for a release from certain debt, Piramal would assist Nephron in establishing direct relationships with Piramal's customers for the asthma drugs purchased from Nephron and previously sold under Piramal's brand. *Id.* at 7, ¶ 40. Additionally, Section 3 of the Termination Agreement provided that as to each customer of Piramal previously provided with Nephron-manufactured asthma drugs under the PMDA,

> . . . Nephron will agree to assume any liability that RxElite may have for chargebacks to vendors (e.g., Medicaid rebates, and service level rebates, etc) owed in relation to service those customers pursuant to transactions made in accordance with applicable law, provided that such rebates are disclosed to Nephron and do not exceed $1,000,000.00. All chargeback balances specifically related to products directly sold by Nephron to a previous RxElite customer associated with servicing an account, specifically McKesson, Cardinal, AmerisourceBergan, and Rochester Drug, shall be assumed by Nephron.

*Id*. at 7, ¶ 41. A "chargeback," in pharmaceutical industry parlance, is the difference between the wholesale acquisition cost for drugs paid by a wholesaler and the lower contract price paid by the buyer. *Id.* at 4, ¶ 15. Under the PMDA, this difference was credited to the wholesaler by Piramal or, at the relevant times, its predecessors-in-interest. *Id.* at ¶ 16.

As amended, the Complaint alleges that Nephron breached section 3 of the Termination Agreement by failing to pay one such wholesaler, McKesson, some 1.8 million dollars in chargebacks, as a result of which McKesson offset that amount from debts it owed Piramal for anesthetic gas products. *Id.* at 11-12, ¶¶ 61-66. The Complaint also states an alternative claim for indemnity. *Id.* at 12, ¶¶ 71-75. Piramal seeks compensatory damages and a declaration that Nephron is estopped, based upon its prior course of conduct, from asserting the one million dollar cap under section 3 of the PMDA.

**ANALYSIS**

**1.	Piramal's Motion to Amend**

Rule 15(a) is very liberal and leave to amend "shall be freely given when justice so requires." *See AmerisourceBergen Corp. v. Dialysist West, Inc.,* 465 F.3d 946 (9th Cir. 2006). However, a district court need not grant leave to amend where the amendment: "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *Id.*

Here, Nephron opposes Piramal's Motion to Amend on the ground that it would be futile in light of Nephron's arguments regarding standing, joinder, and the identity of the correct defendant, as set forth in its briefing on the Motion to Dismiss. For the reasons set forth below, the Court finds that the amendment sought by Piramal would not be futile, and Piramal's Motion to Amend is granted in accordance with the liberal standard articulated above. Hence, the Court's analysis throughout this Memorandum Decision

and Order will be rendered in light of the claims and allegations contained in the Second Amended Complaint (Dkt. 25, Ex. A).

**2.      Piramal's Motion to Strike**

Nephron does not oppose Piramal's motion to strike attachments to Nephron's reply brief (Dkt. 28), which were intended to establish the citizenship of McKesson, a third party to this action. *Def.'s Resp.* at 2, Dkt. 32.  The Court agrees with Nephron that the information contained in the attachments is unnecessary to its ruling on the Motion to Dismiss, and that such information, if it became relevant, is subject to judicial notice under Fed. R. Evid. 201(b) and (c).  Therefore, Piramal's Motion to Strike (Dkt. 30) will be denied as moot.

**3.      Nephron's Motion to Dismiss**

Originally, in addition to urging dismissal on the basis of a lack of standing and the failure to join an indispensable party, Nephron sought dismissal of the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  However, in its reply briefing (Dkt. 28), Nephron seems to have conceded that Piramal's second Amended Complaint adequately state claims for which relief and has dropped its 12(b)(6) challenge.  *Def.'s Reply* at 2, Dkt. 28.  Nephron was correct to do so; the Second Amended Complaint states a claim for breach of contract and for indemnity, as well as for declaratory relief.  As it stands, then, Nephron's motion turns upon the issues of standing and the failure to join McKesson as an indispensable party under Rule 19, with a particular emphasis on the latter.

**Rule 19(a) Legal Standard**

A Rule 19 motion poses "three successive inquiries." *EEOC v. Peabody Western Coal Co.*, 610 F.3d 1070, 1078 (9th Cir.2010). First, the court must determine whether a nonparty should be joined under Rule 19(a). If an absentee is a necessary party under Rule 19(a), "the second stage is for the court to determine whether it is feasible to order that the absentee be joined." *Id*. If joinder is not feasible, the court must determine whether the case can proceed without the absentee or whether the case should be dismissed because the absentee is an indispensable party. *Id*. An indispensable party is one who "not only [has] an interest in the controversy, but [has] an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." *Id*. Naturally, if a party is not necessary under Rule 19(a), the Court need not consider whether they are indispensable under Rule 19(b). *Knox v. U.S. Dept. of Interior*, 759 F.Supp.2d 1223, 1237. Finally, in deciding a motion brought under Rule 12(b)(7), the allegations contained in the Complaint are accepted as true, and all reasonable inferences arising therefrom are drawn in favor of the Plaintiff. *Paiute-Shoshone Indians of Bishop Community of Bishop Colony, Cal., v. City of Los Angeles*, 637 F.3d 993, 996 n.1 (9th Cir. 2011).

    **A.**    **McKesson is not a Required Party under Rule 19(a)**

Nephron claims that McKesson is a required party under Rule 19(a) because, in its view, the Court must necessarily decide the applicability of § 3 of the Termination Agreement to McKesson's offsets of its chargebacks, in order to determine if the

Termination Agreement was breached. From this central premise, Nephron argues that complete relief cannot be accorded among the existing parties under Rule 19(a)(1)(A), or that McKesson's "interest in its entitlement to the chargebacks" is at stake in the litigation, invoking Rule 19(a)(1)(B). *Def.'s Reply* at 8, Dkt. 28.

Both arguments are unpersuasive. As to the "complete relief" prong of Rule 19(a), the relief that matters is the relief sought "among existing parties." Fed. R. Civ. Proc. R. 19(a)(1)(A). Currently, the relief sought by Piramal is judgment against Nephron on its breach of contract and declaratory relief claims, and the relief sought by Nephron is a judgment in its favor on those same claims. At this stage in the litigation, no party seeks anything from McKesson, which had already made itself whole by taking Piramal's gas products in lieu of its chargebacks, with the apparent consent of Piramal. *2d Amd. Compl.* at 11-12 ¶¶ 61-64, Dkt. 25 Ex. A; *Pl.'s Resp.* at 9, Dkt. 25. Given this context, Nephron has not raised any argument capable of supporting its assertion that a judgment rendered for either party would not be "complete."[1] Further, Nephron has provided no basis for believing that the tools of discovery, put to their intended use in the adversary system, would be insufficient to provide the parties and the Court with the information required for it to make a just and complete determination of the *existing* parties' rights.

---

[1] Even if the Court ordered the joinder of McKesson, it is not at all clear from Nephron's briefing what role McKesson would play in the litigation as a party. Presumably, McKesson would be joined as a defendant, but Rule 19 cannot compel Piramal to claim against McKesson on the basis that its offsets were improperly taken, where the record clearly establishes that Piramal feels otherwise. *Pl.'s Resp.* at 9, Dkt. 25. Nor can McKesson be joined as involuntary plaintiff, as it has no injury to claim.

Next, in making its claims under Rule 19(a)(1)(B)(i)-(ii), Nephron argues that McKesson has an interest in the action, in the form of its "interest in its entitlement to the chargebacks,"[2] and is therefore a necessary party to the suit. *Def.'s Reply* at 8, Dkt. 28. This argument places the cart before the horse by assuming the existence of an "interest" in McKesson that could only arise *after* McKesson were joined. *Id.* at 9. This is so because McKesson's entitlement to the withheld funds is simply not before the Court, and to the extent the Court will consider the issue, it will do so only to determine whether, under the appropriate standard of proof, said funds related to the chargebacks described under § 3 of the Termination Agreement. McKesson's "legal entitlement to the money" is not now "at issue," nor will its "entitlement to the money" be "adjudicated in its absence." *Id.*

Nephron also argues that McKesson has an indirect interest in the subject matter of the suit, in that if the Court found that the McKesson offsets were unrelated to the chargebacks described in § 3, McKesson might find itself collaterally estopped from litigating the relatedness issue in a hypothetical future proceeding brought against it by Piramal to recover the amount in issue here. In support of this argument Nephron cites to *Aguilar v. Los Angeles County, L.A.*, in which the court dismissed Plaintiffs' suit in negligence under Rule 19(a)(1)(B)(i) for failure to join a necessary party, Plaintiffs'

---

[2] We note that the actual language of Rule 19(a)(1)(B) requires, as a predicate to further inquiry along this prong of Rule 19, that the person to be joined "*claims* an interest," not that they merely possess one in the abstract. (Emphasis added.) *U.S. v. Bowen*, 172 F.3d 682, 689 (9th Cir. 1999) (noting that where the absent party is aware of the suit, joinder is "contingent upon an initial requirement that the absent party *claim* a legally protected interest relating to the subject matter of the action." (Internal citations omitted.)) Here, while there is no indication that McKesson has itself claimed any interest, we decline to resolve this prong of the necessary-party analysis against Nephron only because it is unclear whether McKesson is, in fact, on notice of the lawsuit.

child, who was the primary victim of the alleged medical malpractice. 751 F.2d 1089 (9th Cir. 1985). In that case, the Ninth Circuit held that dismissal was warranted because the absent child's interest in his ability to litigate the negligence issue in a suit for his distinct damages was impeded by the potential application of collateral estoppel to the negligence issue. *Id.* at 1092. The *Aguilar* court emphasized that in determining whether a nonparty had an "interest" within the meaning of Rule 19(a)(1)(B), it would follow a pragmatic rather than a technical approach. *Id*. at 1093.

*Aguilar*, even assuming it states the applicable law on point,[3] is readily distinguishable from the present case. There, the absent child's interest in the outcome of his parents' malpractice action was manifest, because the child filed his own separate state-court suit, alleging a distinct cause of action but also dependent upon a finding of negligence, only a day after his parents' suit was filed. *Id*. at 1091. Privity of interest between the parents and the child was clear despite the disparate causes of action, since the "underlying issue of liability [defendant's negligence] [was] identical to both parties." *Id.* at 1093 (citing California state law.) For these reasons, an adverse finding regarding negligence in his parents' suit springing from the same nucleus of facts would likely have made issue preclusion an easy call for the judge in the parallel state proceeding. From

---

[3] *Aguilar* examined the form of collateral estoppel applied by California state courts. 751 F.2d at 1092. In a hypothetical future suit involving McKesson, there is no assurance that *Aguilar* would state the correct legal standard for the jurisdiction in question.

these circumstances, the *Aguilar* court reasonably concluded that the child had an interest in the outcome of his parents' suit, which was imperiled by his absence. *Id*. at 1093.[4]

The facts and circumstances of the present case are very different. There is no parallel legal proceeding pending in any other court involving McKesson and raising any of the issues likely to arise in this litigation. More importantly, there seems little if any chance that such would occur in the future, given that Piramal has unequivocally stated its position that "the McKesson Chargebacks are legitimate and rightfully owed." *Pl.'s Resp.* at 9, Dkt. 24. The Court will not ascribe an "interest" to McKesson under Rule 19 based on Nephron's mere speculation that Piramal, if it loses here, will reverse itself with regard to the legitimacy of the chargebacks and haul McKesson into court on that issue. In sum, the interest claimed for McKesson by Nephron is simply too speculative, remote, and unsubstantiated on this record to support a finding that McKesson is a necessary party under Rule 19(a)(1)(B).

Because the Court finds that McKesson has not claimed a Rule 19 interest in the subject matter of this suit, and that Nephron has failed to establish the existence of such an interest under federal law, it need not take up Nephron's remaining arguments under Rule 19(a)(1)(B), since these all depend upon the existence of such an interest. Accordingly, the Court concludes that McKesson is not a necessary party to this action.

**B.      Piramal has standing to sue**

---

[4] Circuit Judge Ferguson wrote persuasively in his dissent that under the circumstances, the absent child's parents had such a strong incentive to fully litigate the negligence issue that "as a practical matter" under Rule 19, the child's ability to protect the interest was neither impaired nor impeded.

Standing requires that plaintiffs (1) suffer an injury in fact, (2) fairly traceable to the defendant, and (3) show that it is likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The plaintiffs bear the burden of establishing these elements. *Id*. "At the pleading stage, general factual allegations . . . may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Id.* at 561 (internal quotation marks omitted).[5]

Nephron's standing arguments overlap significantly with its arguments under Rule 19, and, where relevant, the Court's analysis above applies in equal force here. As amended, Piramal's Complaint alleges that Piramal suffered an injury traceable to Nephron's failure to indemnify or otherwise pay the chargebacks under the TA. The Complaint, as amended, seek relief which would appear to redress the injuries suffered as a result of the failure to indemnify. In the context of a motion to dismiss, the standing elements of traceability and redressability do not require the Plaintiff to allege more than has been pled here. For these reasons, the Court finds that the Second Amended Complaint alleges sufficient factual matter, taken as true, to supply the elements of standing under *Lujan*.

### C. Piramal has not sued the wrong defendant

Given the reasoning and result of the Court's Rule 19 analysis, little elaboration

---

[5] Of course, the Supreme Court in *Bell Atlantic Corp. v. Twombly* has, in effect, increased the amount of factual matter a plaintiff must allege in its complaint in order to survive a motion to dismiss for failure to state a claim. 550 U.S. 544, 570 (2007). However, having already determined that the Complaint, as twice amended, satisfies this heightened standard, it suffices to say that under *Lujan* where the Complaint recites factual matter pertaining to the elements of standing sufficient to satisfy *Twombly*, the Court has neither the power, nor any reason, to impose a higher fact-pleading standard on Plaintiffs simply because the motion to dismiss is cast in terms of Rule 12(b)(1) rather than Rule 12(b)(6).

Is necessary to explain the Court's rejection of this argument. As matters stand, McKesson has asserted no interest in the subject matter of the lawsuit, and Piramal has not only declined to bring any claims against McKesson, it has affirmatively declared its belief that the chargebacks against which McKesson offset its separate gas-products debt "are legitimate and rightfully owed." *Pl.'s Resp.* at 9, Dkt. 24. This position is compatible with, and implicit in, the allegations in the Complaint. Having failed to demonstrate that McKesson is a necessary party, Nephron cannot displace Piramal as master of its own lawsuit merely by formulating hypotheses in which McKesson is the real culprit. *See, e.g., Def.'s Reply* at 2, Dkt. 28.[6] If it wishes to pursue such a hypothesis, it must do so by initiating its own third party complaint against McKesson.

## ORDER

**IT IS ORDERED THAT:**

1. Defendant's Motion to Dismiss (Dkt. 17) is DENIED.

2. Plaintiff's Motion to Amend (Dkt. 25) is GRANTED.

3. Plaintiff's Motion to Strike (Dkt. 30) is DENIED as moot.

---

[6] *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (stating that "plaintiff [is] the master of the claim," and that a defendant cannot compel a plaintiff to modify their complaint to enable defendant to realize a more desirable forum. Although stated in terms of claims instead of parties, absent a required joinder issue the same principle applies with equal force where a defendant, as here, would seek to compel plaintiff to expand the scope of its dispute to include a party against whom the plaintiff holds no grudge.



DATED: February 27, 2012

_____
B. Lynn Winmill
Chief Judge
United States District Court